**DAVID J. HOLDSWORTH** (4052)
Attorney for Plaintiff
9125 South Monroe Plaza Way, Suite C
Sandy, UT  84070
Telephone (801) 352-7701
Facsimile (801) 567-9960
david_holdsworth@hotmail.com

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| SHARON MILLS, | : | **COMPLAINT** |
| | : | **(JURY TRIAL DEMANDED)** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| INTERMOUNTAIN HEALTH CARE, INC., | : | |
| | : | Case No. 1:18-cv-00075-CW |
| | : | |
| Defendant. | : | Judge Clark Waddoups |

COMES NOW the Plaintiff, Sharon Mills, complains of Defendant Intermountain Health Care, Inc., demands trial by jury (as to all issues triable by a jury), and, as and for causes of action alleges as follows:

## JURISDICTION AND VENUE

1. Plaintiff files this Complaint against the Defendant alleging violations of Title VII of the Civil Rights Act of 1964, as amended, and the Americans with Disabilities Act of 1990, as amended, which provide that it is unlawful to

discriminate against an employee in her employment on the basis of her gender, disability and having engaged in protected activity.

2.  Jurisdiction is conferred by Title VII of the Civil Rights Act of 1964, as amended, and the Americans with Disabilities Act ("ADA").  Jurisdiction is also based on 28 U.S.C. §§ 1331, 1332 and 42 U.S.C. § 1981, et. seq.

3.  Venue is proper in the federal District of Utah because the actions and decisions alleged herein occurred in such District.

## PARTIES

4.  Sharon Mills is a citizen of the United States and a resident of the State of Utah.

5.  Intermountain Health Care, Inc., is an employer within the meaning of Title VII and the ADA which does business in the State of Utah.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6.  On or about August 12, 2015, within 300 days from the last date of the alleged harms, Plaintiff started the process to file a Charge of Discrimination with the Utah Antidiscrimination Division of the Utah Labor Commission.  Thus, all jurisdictional requirements have been met as required by Title VII of the Civil Rights Act of 1964, as amended, and the Americans with Disabilities Act of 1990, as amended.

7. On or about September 23, 2015, Plaintiff filed a Charge of Discrimination in which Plaintiff alleged that Defendant had discriminated against her based on her gender and disability and that she was subject to retaliation.

8. Plaintiff ha snow exhausted all of her administrative remedies.

## STATEMENT OF FACTS

9. Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 8 above as if alleged in full herein.

10. Plaintiff alleges that she suffers from anxiety, depression and post-traumatic stress disorder ("PTSD"), which affects her in the following ways: panic attacks, loss of concentration, loss of memory, feelings of being overwhelmed and other manifestations.  She alleges she frequently experienced these symptoms while at work and, thus, that her impairments affected her work performance.

11. She alleges these conditions substantially limit some of her major life activities and qualify as disabilities.

12. She also alleges she is a qualified individual with a disability in that she could perform the essential functions of the job she held or desired, with or without reasonable accommodation.

13. Plaintiff alleges she began working in the medical field in 1989.

14. Plaintiff alleges that, in 1993, Defendant hired her as a medical assistant at its South Ogden, Utah, clinic.

15. Plaintiff alleges that, for the next 20-plus years, she worked hard and well for Defendant.

16. Plaintiff alleges that beginning in approximately April 2014, Defendant subjected her to discrimination in employment based on her gender, and disability.  Plaintiff alleges that, in April 2014, she inquired about a medical lab supervisor position which was going to become available at the South Ogden Clinic and was told that the hiring manager, Pamela Faulkman ("Faulkman"), would prefer to place a man in the position "because women cause too much drama".

17. Plaintiff alleges that, in April 2014, she complained of this comment to Defendant's human resources department, and she alleges that as a result of her complaint, Defendant took adverse action against her, which caused her to look for employment at other Intermountain Health Care clinics starting in approximately May 2014.

18. Plaintiff alleges that, in June 2014, Plaintiff obtained employment as a full-time medical assistant for a family practice physician at Intermountain Health Care's Layton Clinic.

19. Plaintiff alleges that, soon after Ms. Mills began working at the Layton Clinic, Plaintiff's supervising physician at the Layton Clinic started finding fault with Plaintiff's performance and began making complaints about Plaintiff's performance to Plaintiff's practice manager.

20. Plaintiff alleges the conduct which occurred at the Layton Clinic constitutes a continuing action in that it constituted a series of separate acts that collectively constitute one unlawful employment practice.

21. As a result, in late July 2014, Plaintiff requested to be able to transfer to another Intermountain Health Care clinic because she had not received sufficient training and her supervisor physician seemed to be upset with her because she was not doing everything perfectly and this friction in the working relationship was aggravating her disabilities.

22. Plaintiff alleges that Defendant did not timely respond to this request for a reasonable accommodation and, instead, began issuing discipline to Plaintiff.

23. As part of such discipline, Defendant counseled Plaintiff to "just work harder" and to "move faster".

24. Plaintiff alleges that, in October of 2014, she asked Richards for more training due to the comment, but was denied the request.

25. Defendant eventually agreed to move Plaintiff, not to another Intermountain Health Care clinic, but to the immunizations department at the Layton Clinic. This was not the request for accommodation Ms. Mills had made and, so, she reiterated her request to be transferred to a different clinic.

26. Plaintiff alleges Defendant did not timely respond to this renewed request for accommodation and scheduled a meeting with her in October 2014.

27. Plaintiff alleges that, shortly before the October 2014 meeting, the Layton Clinic's office manager, Karen Richards ("Richards"), told her that she was performing poorly and threatened Plaintiff with a write-up.

28. Thus, in October 2014, Plaintiff asked the Human Resources manager if she could meet with her to discuss several concerns Plaintiff had about her employment and to discuss her request regarding transferring to another Intermountain Health Care clinic.

29. Plaintiff alleges that, in October of 2014, she met with human resources director, Donna Gold ("Gold"), Director, Paul Van Wagenen ("Van Wagenen"), and the Director of Clinics, John Ostrum ("Ostrum").

30. Plaintiff alleges that, during this meeting, she made Defendant aware of her disabilities.

31. Plaintiff alleges that, during this meeting, she informed Defendant that the stress she was suffering was having an adverse effect on her work performance and requested that the stress she was under be relieved by moving her to a new work setting.  Plaintiff alleges this request was a request for a reasonable accommodation.

32. Plaintiff alleges that, during this meeting, a Human Resources director told her that she should go see another doctor, that she needed to get off her medication, that she should go see EAP and that she was unhirable.

33. Plaintiff alleges that, during this meeting, she did put Intermountain Health Care on notice that she was requesting a reasonable accommodation in the form of a transfer to another clinic because of her medical condition and disability.

34. Plaintiff alleges that, during the meeting, Van Wagenen declined her request for accommodation, and told her that they could not help her to get another job within Intermountain Health Care.  Plaintiff alleges that, during the meeting, Ostrum offered to help her fine tune her resume so that she could apply for a position outside of Defendant.

35. Plaintiff alleges that she was regularly applying for other positions at this time and asked office manager Richards not to mention her verbal warning.

Richards told her that she would not mention it to employers outside of Intermountain Health Care, but would mention it to employers within Intermountain Health Care.

36. Plaintiff alleges that the stress related to the hostility at the Layton Clinic and pressure to find work elsewhere caused her disabilities to grow more severe, to the point that she was crying daily and began suffering severe memory loss.

37. Plaintiff alleges that, because Defendant's actions and inactions were causing her disabilities to worsen and because Defendant was unwilling to reasonably accommodate her disability, she requested to be allowed to take FMLA medical leave starting about December 8, 2014.

38. Plaintiff alleges that while she was on leave, she was on short-term disability and was covered with health insurance.

39. Plaintiff alleges she was eventually forced to leave the employment of Intermountain Health Care under circumstances which she alleges constitutes a constructive discharge.

40. Plaintiff alleges that, on June 30, 2015, she lost the health insurance that she was being provided with through Defendant.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### DISCRIMINATION BASED ON GENDER

41. Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 40 above as if alleged in full herein.

42. In order to state a claim of discrimination based on gender, Plaintiff must allege facts which establish, or tend to establish, that: (1) she is a member of a protected class; (2) she was qualified for the position she held or desired; (3) Defendant subjected her to an adverse employment action; and (4) the circumstances surrounding the adverse action give rise to an inference of discrimination on the basis of gender.

43. Plaintiff is female and a member of a protected class.

44. Plaintiff alleges she was qualified for the position she held or desired.

45. Defendant subjected Plaintiff to an adverse employment action. In *Piercy v. Maketa,* 480 F.3d 1 92, 1203 (10th Cir. 2007), the Tenth Circuit held that an adverse employment action includes "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."

46. An adverse employment action may also take the form of a constructive discharge. In *Exum v. U.S. Olympic Committee,* 389 F.3d 1130 (10th Cir. 2004), the Tenth Circuit held that a constructive discharge occurs when an employer,

through unlawful acts, makes working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign.

47. Plaintiff alleges that, because she could not return to the stress that the situation at Layton Clinic has caused because she was not being accommodated, she felt forced to end her employment with Intermountain Health Care.

48. Plaintiff suffered a constructive discharge, and as such, she alleges that she suffered an adverse employment action.

49. Plaintiff alleges the circumstances, as set forth above, support an inference of discrimination on the basis of gender.

## SECOND CAUSE OF ACTION
## PLAINTIFF WAS DENIED A REASONABLE ACCOMMODATION

50. Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 49 above as if alleged in full herein.

51. In order to state a claim of failure to accommodate, Plaintiff must allege facts which establish, or tend to establish, that: (1) she has a physical or mental impairment that substantially limits one or more of the major life activities; (2) she was qualified perform the essential functions of the job she held or desired, with or without reasonable accommodation; (3) she requested a reasonable accommodation or Defendant knew or should have known of her need for an accommodation; and (4) Defendant refused or failed to provide a reasonable accommodation.


through unlawful acts, makes working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign.

47. Plaintiff alleges that, because she could not return to the stress that the situation at Layton Clinic has caused because she was not being accommodated, she felt forced to end her employment with Intermountain Health Care.

48. Plaintiff suffered a constructive discharge, and as such, she alleges that she suffered an adverse employment action.

49. Plaintiff alleges the circumstances, as set forth above, support an inference of discrimination on the basis of gender.

## SECOND CAUSE OF ACTION
## PLAINTIFF WAS DENIED A REASONABLE ACCOMMODATION

50. Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 49 above as if alleged in full herein.

51. In order to state a claim of failure to accommodate, Plaintiff must allege facts which establish, or tend to establish, that: (1) she has a physical or mental impairment that substantially limits one or more of the major life activities; (2) she was qualified perform the essential functions of the job she held or desired, with or without reasonable accommodation; (3) she requested a reasonable accommodation or Defendant knew or should have known of her need for an accommodation; and (4) Defendant refused or failed to provide a reasonable accommodation.

52. Plaintiff has anxiety, depression and PTSD and suffers panic attacks, memory loss, loss of concentration and severe anxiety, which substantially limits some of her major life activities.

53. Plaintiff was qualified for the position she held or desired in that she could perform the essential functions of such positions with or without a reasonable accommodation.

54. Plaintiff requested various reasonable accommodations. She also alleges Defendant knew, or should have known, of her need for accommodation. Plaintiff alleges that she requested a transfer to a different position in order to alleviate the symptoms of her disability.

55. Plaintiff alleges Defendant refused, declined or failed to provide her with reasonable accommodations.

### THIRD CAUSE OF ACTION
### DISCRIMINATION BASED ON DISABILITY

56. Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 55 above as if alleged in full herein.

57. In order to state a claim of discrimination based on disability, Plaintiff must allege facts which establish, or tend to establish, that: (1) she is a person with a disability in that she has an impairment which is substantially limiting to a major life activity; (2) she was otherwise qualified for the positions she held or desired and

could perform the essential duties of such positions, with or without reasonable accommodation; (3) Defendant subjected her to an adverse action and; (4) the circumstances surrounding the adverse action give rise to an inference of discrimination on the basis of disability.

58. Plaintiff has anxiety, depression and PTSD. Plaintiff alleges such impairments substantially limit one or more of her major life activities.

59. Plaintiff alleges she is qualified for the position she held or desired in that she could perform the essential functions of such positions with or without a reasonable accommodation.

60. Plaintiff alleges Defendant subjected Plaintiff to an adverse employment action in that Plaintiff suffered a constructive discharge.

61. Plaintiff alleges the circumstances, as set forth above, support an inference of discrimination on the basis of disability.

### FOURTH CAUSE OF ACTION
### UNLAWFUL RETALIATION

62. Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 61 above as if alleged in full herein.

63. In order to state a claim of retaliation, Plaintiff must allege facts which establish, or tend to establish, that: (1) she engaged in protected opposition to discrimination; (2) Defendant subjected her to an adverse employment action

contemporaneous with or subsequent to the protected activity; and (3) there is a causal connection between the protected activity and the adverse employment action.

64. Plaintiff alleges she engaged in a protected activity. A protected activity is one in which the individual has complained about discrimination, filed a charge of discrimination or opposed a discriminatory practice.

65. Plaintiff alleges she complained of gender discrimination in April of 2014. By doing so, Plaintiff engaged in a protected activity. Plaintiff alleges that, by requesting reasonable accommodations, she also engaged in protected activity.

66. Plaintiff alleges that, thereafter, Defendant took adverse action against her.

67. Plaintiff alleges a causal connection exists between her engaging in protected activity and the adverse employment action Defendant took against her. Plaintiff makes such allegations based on temporal proximity, motive and method.

## IV.  DAMAGES

68. Ms. Mills alleges Defendant's actions and inactions have caused her various losses, injuries and other damages, including lost wages, lost benefits and emotional distress.

## V.  RELIEF REQUESTED

Accordingly, based on the above allegations, claims and damages, Plaintiff requests the following relief, specifically an Order and Judgment:

1. Declaring that Defendant discriminated against Ms. Mills on the basis of her gender and/or disability, in violation of Title VII and the ADA;

2. Awarding Ms. Mills "make whole" relief, including awarding Ms. Mills lost wages and benefits from the time Defendant failed to accommodate Ms. Mills and brought Ms. Mills' employment o an end until Ms. Mills secured comparable employment;

3. Awarding Ms. Mills her reasonable attorney's fees and costs;

4. Awarding Ms. Mills such other relief as may be just and equitable.

DATED this 2nd day of July, 2018.

       /s/ David J. Holdsworth
David J. Holdsworth
*Attorney for Plaintiff*

VERIFICATION

Sharon Mills, being first duly sworn, upon her oath, deposes and says that she is the Plaintiff in the above-entitled action, that she has read the foregoing COMPLAINT and understands the contents thereof, and the allegations made therein are true of her own knowledge, except as to those matters alleged on information and belief which she believes to be true.

    /s/ Sharon Mills_____
Sharon Mills

SUBSCRIBED AND SWORN to before me, a Notary Public, this \_\_\_\_ day of July, 2018.

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES:    RESIDING AT: _____

    _____